**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD M. WALSH,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. EDCV 11-170 AGR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Richard M. Walsh filed this action on February 3, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on February 17 and 18, 2011. (Dkt. Nos. 8, 9.) On November 7, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

# PROCEDURAL BACKGROUND

On March 23, 2009, Walsh filed applications for disability insurance benefits and supplemental security income benefits alleging an onset date of March 1, 2005. AR 10, 119-29. The applications were denied initially and upon reconsideration. AR 10, 42-44. Walsh requested a hearing before an Administrative Law Judge ("ALJ"). AR 71. On January 27, 2010, the ALJ conducted a hearing at which Walsh and a vocational expert testified. AR 20-37. On February 9, 2010, the ALJ issued a decision denying benefits. AR 7-19. On November 27, 2010, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Walsh met the insured status requirements through March 31, 2008. AR 12. Walsh had the severe impairments of arthritis, asthma, bipolar disorder, and hepatitis C. *Id.* Walsh had the residual functional capacity ("RFC") to perform light work, "except no work at unprotected heights or on dangerous machinery, no balancing, occasional climbing, stooping, kneeling, crouching, or crawling, no industrial levels of fumes or gases, entry level work, no lengthy intense communication with the general public." AR 16. He was unable to perform any past relevant work. AR 18. There were, however, jobs that exist in significant numbers in the national economy that he could perform, such as small products assembler, inspector, and bench assembler. AR 18-19.

## C. Treating Physician

Walsh contends the ALJ erred by rejecting the opinion of his treating psychiatrist, Dr. Hudson.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's

opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and internal quotations omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) the length of the treatment relationship and frequency of examination;[1] (2) the nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) the consistency with the record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The ALJ gave "some weight" to Hudson's June 25, 2009 opinion but rejected its conclusions because the opinion: (1) was provided on a "check-the-box type mental status assessment form;" (2) omitted Walsh's polysubstance abuse; and (3) was egregiously accommodative. AR 15.

An ALJ may discount a check-the-box report that does not explain the basis of its conclusions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[2] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

4

check-list report); *see also Thomas*, 278 F.3d at 957 (an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"). Dr. Hudson's opinion was provided on a check-list questionnaire that found Walsh seriously limited in most categories and unable to meet competitive standards in other categories. AR 434-39. When asked to describe her clinical findings, Dr. Hudson wrote, "insomnia, irritability," "continued irritability, easily agitated/angered," "poor memory/concentration," "poor ability to handle stress," poor concentration," "anxiety around others," and "easily agitated/irritable." AR 434-38. Dr. Hudson's medical records were no more illuminating and do not contain mental status examinations. In January 2009, Dr. Hudson reported that Walsh worked as a cook with the Salvation Army, was cooperative and well groomed, had an OK mood, and had no auditory or visual hallucinations or delusions. AR 339. In May 2009, Walsh had moved to Hesperia but could not find a job. Walsh experienced increased depression, poor sleep and irritability "re: ongoing financial stressors." AR 429. The ALJ could reasonably determine that Dr. Hudson did not explain the basis of her extreme limitations in the form.

The ALJ further found that Dr. Hudson did not address Walsh's polysubstance abuse in her June 25, 2009 opinion, despite being "well documented" in the record. AR 15, 439. Dr. Hudson's treatment notes repeatedly referred to Walsh's methamphetamine and alcohol use, and rehabilitation through the Salvation Army program, Alcoholics Anonymous and Narcotics Anonymous. AR 339, 341-42, 345, 440-43; *see also Orn*, 495 F.3d at 631-32 (an ALJ may discount a treating physician's opinion that is inconsistent with other substantial evidence in the record).[3] Walsh argues the polysubstance

---

[3] The record as a whole reflects Walsh's polysubstance abuse and alcohol dependence. *See, e.g.,* AR 213-16, 228, 230, 232, 250, 255, 264, 266-67, 273, 348-49, 351-52, 355, 365, 377.

5

abuse issue is a "red herring" because Dr. Hudson wrote the opinion after Walsh's September 2008 sobriety date. JS 6. The ALJ, however, found the sobriety date to be questionable.[4] AR 18. Dr. Hudson did not include substance abuse in her diagnosis and simply did not answer the question of whether, if Walsh's impairments include alcohol or substance abuse, such abuse contributes to his mental limitations. AR 434, 439. The ALJ reasonably found Dr. Hudson's opinion omitted Walsh's polysubstance abuse.

The ALJ discounted Dr. Hudson's opinion because it was "an egregious accommodation" to Walsh. Walsh argues the ALJ failed to "cite any bases for such an inflammatory statement." JS 7. However, the ALJ explained that he discounted Dr. Hudson's opinion because "it is clear the doctor knew the form was being filled out for a claim for supplemental security income (SSI) purposes and that [Walsh's] issues included financial problems." AR 15. The ALJ found Walsh's subjective reports were "wholly unreliable." *Id.*

Substantial evidence supports the ALJ's reasons for discounting Dr. Hudson's opinion as an accommodation. Although "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them," the ALJ "may introduce evidence of actual improprieties." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (citation omitted). Moreover, an ALJ is entitled to reject the treating physician's opinion if the doctor becomes an advocate for a claimant. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). The ALJ may draw reasonable inferences logically flowing from the record. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Dr. Hudson knew that Walsh's mental issues included financial problems and distress over his SSI appeal. AR 15. In 2008 and 2009, Dr. Hudson referred

---

[4] In September 2009, Walsh reported to Dr. Hudson that he had not done street drugs for about two months and had recently drunk beer. AR 440-43. The Phoenix Clinic found continued services not justified because of Walsh's low attendance and substance use. AR 442.

6

to Walsh's depressed mood related to his financial stressors when he did not find a job. AR 341, 343-44, 346, 429. In January 2008, Dr. Hudson completed an application for General Relief financial assistance on Walsh's behalf. AR 347. On July 31, 2008, Dr. Hudson noted that Walsh suffered from "[d]istress re: SSI appeal." AR 343. On May 28, 2009, Dr. Hudson noted that Walsh "had moved to Hesperia [and] could not find [a] job." AR 429. She further noted that his increased depression was due to his ongoing financial stressors and that he was "awaiting SSI decision." AR 429. It was in this context that Dr. Hudson completed the Mental Residual Functional Capacity Questionnaire. AR 428. The ALJ could reasonably infer from the record that Dr. Hudson's opinion was accommodative to Walsh's subjective reports, which the ALJ found not credible. For the reasons discussed below, the ALJ's finding that Walsh was not credible is supported by substantial evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may properly reject treating physician's opinion based on subjective complaints when ALJ properly discounts claimant's credibility).

Walsh argues that Dr. Hudson's opinion was consistent with the opinion of the State Agency review physician, Dr. Amado. JS 5. Walsh's argument is not well taken. Dr. Hudson opined that Walsh would miss more than four days of work per month due to his psychiatric impairments, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms was "seriously limited, but not precluded." JS 5; AR 436, 439. Dr. Amado opined that Walsh would be "moderately limited" in "the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." JS 4-5; AR 421. As Walsh acknowledges, the degree of limitation identified by Dr. Hudson was "more restricted" than the degree of limitation identified by Dr. Amado. JS 5. Indeed, Dr. Amado concluded

7

that "mild/moderate functional limitations persist" from Walsh's mental impairments, including substance abuse in early remission, but "would not preclude unskilled work activity in a low-stress setting away from the general public." AR 418. In contrast, Dr. Hudson essentially found that Walsh could not work. AR 36-37, 439. Thus, contrary to Walsh's contention, Dr. Hudson's opinion was contradicted by Dr. Amado.

The ALJ articulated specific and legitimate reasons, based on substantial evidence, for discounting Dr. Hudson's opinion. The ALJ did not err.[5]

### D. State Agency Physician

Walsh contends the ALJ failed to comment on the opinion of Dr. Amado, a State Agency physician, that Walsh would be "moderately limited" in the ability to complete a normal work day without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Dr. Amado found Walsh moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or

---

[5] To the extent Walsh contends the ALJ failed in his duty to develop the record by not ordering a consultative psychiatric evaluation or medical expert testimony at the hearing, his claim fails. The ALJ "has broad latitude in ordering a consultative examination" where there is ambiguity or insufficiency in the record. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation and quotation marks omitted). Here, the record was neither ambiguous nor inadequate to permit a full and proper evaluation of Walsh's mental impairment. The ALJ accurately and throughly discussed the "plethora of mental health treatment records," noting, among other things, Walsh's hospitalizations after increased drinking and not taking his medication, his various GAF scores, ranging from 45 to 60, and his formal mental status examination results, ranging from normal to moderate abnormalities. AR 13-15.

exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. AR 420-21. Dr. Amado found Walsh was not significantly limited in the remaining twelve mental activities. *Id.* Dr. Amado noted that "mild/moderate functional limitations persist and would not preclude unskilled work activity in a low-stress setting away from the general public." AR 418.

The ALJ cited and agreed with Dr. Amado's conclusion that Walsh's mental impairments were not disabling. AR 15. Consistent with Dr. Amado's opinion, the ALJ found mild restrictions on activities of daily living, and moderate restrictions on social functioning and maintaining concentration, persistence or pace. AR 15, 416. Walsh has not identified an inconsistency between the ALJ's RFC assessment and Dr. Amado's opinion. The ALJ found that Walsh had the mental residual functional capacity to perform entry level work with no lengthy intense communication with the general public. AR 16. Dr. Amado found Walsh was not significantly limited in his ability to understand, remember and carry out simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, and maintain socially appropriate behavior. AR 420-21. Moreover, a moderate limitation does not preclude gainful work activity within the meaning of applicable regulations. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The ALJ did not err.

### E. Credibility

Walsh contends the ALJ erred in finding his symptom testimony not credible.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found Walsh's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 17.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[6] (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a

---

[6] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ made no finding of malingering. The ALJ found that Walsh's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC determination. AR 17. The ALJ relied upon three reasons: (1) lack of objective medical evidence supporting Walsh's claims; (2) reputation for dishonesty; and (3) inconsistent statements and conduct. AR 17-18.

As a preliminary matter, the court addresses Walsh's argument that the ALJ's analysis failed to reconcile any differences in Walsh's limitations before and after his purported September 2008 sobriety date. The ALJ questioned Walsh's assertions that he had maintained sobriety since September 2008, particularly without the benefit of ongoing treatment. AR 18. The ALJ noted Walsh gave "inconsistent histories of ongoing drug and alcohol abuse," and he was rejected from further services through the Phoenix Clinic in September 2009 due in part to ongoing substance abuse. AR 14, 440-42. The ALJ also noted that Walsh's testimony overall was suspect in light of his reputation for dishonesty. AR 17. Based on the record as a whole, the ALJ was not required to differentiate between Walsh's limitations before and after September 2008.

**1. Objective Medical Evidence**

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that the medical evidence did not support Walsh's claims. AR 17. The ALJ pointed out the "dearth of objective medical findings and treatment" other than evidence of hepatitis C with an elevated viral load and diarrhea secondary to polysubstance abuse and homeopathic supplements, a left ulna fracture, and a transient episode of

bronchitis. AR 18, 215, 235, 242. The consultative medical examiners found good muscle strength and range of motion in the spine and extremities, no disturbance of gait or station, no signs of radiculopathy or neuropathy, good maneuverability, and clear lungs. AR 12, 308-10, 324-26. Mental status examination findings ranged from normal to moderate abnormalities, and his involuntary hospitalizations occurred after he increased his drinking of alcohol and stopped taking his medication. AR 14, 251, 254, 373. The ALJ's finding is supported by substantial evidence.

### 2. Reputation for Dishonesty

The ALJ also discounted Walsh's credibility based on his criminal history and reputation for dishonesty. AR 17. Because an ALJ may consider "ordinary techniques of credibility evaluation," the court concludes it was appropriate for the ALJ to consider Walsh's criminal history in assessing his credibility. Walsh had multiple incarcerations for offenses including bank fraud and forgery, which are crimes of dishonesty. AR 24. The ALJ's finding is supported by substantial evidence.

### 3. Inconsistent Statements and Conduct

The ALJ also discounted Walsh's credibility based on his inconsistent statements and conduct. An ALJ may consider inconsistent statements by a claimant. *Thomas*, 278 F.3d at 958-59; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (An ALJ may consider the claimant's daily activities as one of many factors in weighing a claimant's credibility.).

On January 27, 2010, Walsh testified that he had no friends and did not like to be around people. AR 17, 29. Yet the Third Party Function Report, dated March 31, 2009, was filled out by Richard Brewster, who identified himself as

Walsh's friend and roommate.[7] AR 178. Walsh testified that he "can't function" and "can barely stay awake most times." AR 26. On the other hand, Mr. Brewster reported Walsh went to church and bible study twice a week. AR 17, 182. Walsh admitted that he sometimes goes on organized trips with Team House people, and could not go on the trip to Mt. Baldy because he was testifying at the hearing. AR 16, 30. The ALJ's reliance on Walsh's inconsistent statements and conduct in weighing his credibility is supported by substantial evidence.

### 4. Conclusion

The ALJ provided clear and convincing reasons, supported by substantial evidence, for finding Walsh's statements and testimony not credible to the extent they were inconsistent with his RFC. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan*, 169 F.3d at 600). The ALJ did not err.

---

[7] Walsh incorrectly argues that the ALJ failed to comment on Mr. Brewster's Third Party Function Report. JS 15. The ALJ considered Mr. Brewster's lay opinion and found that it showed that Walsh could clean and maintain his living space, take medication as prescribed with simple verbal reminders, read for hours each day, go to the park by himself, and go to church and bible study classes. AR 15, 17, 178-85. Walsh also argues that the ALJ should have explained how much weight, if any, he gave Mr. Brewster's lay opinion. JS 15. A reasonable inference from the decision is that the ALJ rejected the third party report to the extent inconsistent with the RFC assessment. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Moreover, any error is harmless because no reasonable ALJ, when fully crediting the third party report, could have reached a different result. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

13

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 10, 2012

                                                ALICIA G. ROSENBERG
                                                United States Magistrate Judge